ORIGINAL

FILED IN OPEN COURT
U.S.D.C. Atlanta

JAN 0 6 2015

James ~~Hatten, Clerk~~
By: ~~Deputy Clerk~~

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| *v.* | Criminal Indictment |
| RONALD ONORATO AND LARRY MILDER | No.   2 15 - CR - 001 |

THE GRAND JURY CHARGES THAT:

### Count One

1. In or about December 2007, in the Northern District of Georgia, and elsewhere, the defendants, RONALD ONORATO and LARRY MILDER, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and others to violate Title 18, United States Code, Section 1344, that is, to devise and execute a scheme and artifice to defraud Integra Bank and Huntington National Bank, financial institutions the deposits for which were insured by the Federal Deposit Insurance Corporation, and to obtain and attempt to obtain moneys owned by and under the custody and control of Integra Bank and Huntington National Bank by means of false and fraudulent pretenses, representations and promises, and by the omission of material facts, knowing and having reason to know that said pretenses, representations and promises were and would be false and fraudulent when made and that said omissions of fact were and would be material.

2. It was pertinent to the scheme and artifice to defraud that RONALD ONORATO was the Chief Executive Officer and LARRY MILDER was the Chief Operating Officer of Northpoint Group, Inc. The Northpoint Group offices were located in Alpharetta, Forsyth County, Georgia.

3. It was also pertinent to the scheme and artifice to defraud that Northpoint Group was an umbrella company which oversaw the construction and maintenance of commercial construction projects. Each construction project was separately organized as a limited liability company. One of the limited liability companies that was created within the Northpoint Group umbrella was Point Berkeley III, LLC. RONALD ONORATO was the President of Point Berkeley III.

4. It was also pertinent to the scheme and artifice to defraud that Point Berkeley III was created to construct a seven story commercial, retail, and office building located in Duluth, Georgia.

5. It was a part of the scheme and artifice to defraud that in the fall 2007, RONALD ONORATO, doing business as Point Berkeley III, LLC, applied to Integra Bank for a $35,613,000 construction loan to construct the seven story commercial, retail, and office building. Due to the size of the loan, Integra Bank had to participate a portion of the loan to Huntington National Bank. In or about December 2007, the loan was approved. Huntington National Bank agreed to fund $20,000,000 of the loan amount and Integra Bank agreed to fund $15,613,000 of the loan amount. Once the loan was approved, Point Berkeley III could draw on the proceeds of the loan by submitting draw requests, with supporting

invoices attached to document the work, for work actually performed on the
construction of the building.

6. It was also a part of the scheme and artifice to defraud that in the fall 2007,
clearing of the site for the building was performed. Prior to the date of the first
draw request, the actual expense incurred for import/clearing and grubbing for
the site was $378,614.60. The import/clearing and grubbing work on the site was
performed by Triton Industries, Inc.

7. It was also a part of the scheme and artifice to defraud that on or about
December 17, 2007, RONALD ONORATO submitted the first draw request to
Integra Bank. The initial draw request included a request for reimbursement of
$1,715,859.60 for import/clearing and grubbing work on the site.

8. It was also a part of the scheme and artifice to defraud that at the direction
of the defendants the project manager for Triton Industries prepared invoices in
the amounts of $378,614.60 and $578,614.60 and delivered them to Northpoint
Group. The defendants attached the inflated invoice from Triton Industries in the
amount of $578,614.60 to the first draw request.

9. It was also a part of the scheme and artifice to defraud that an invoice from
Earth Movers and Associates in the amount of $74,745.00 was attached to the first
draw request as proof of additional expenses incurred for import/clearing and
grubbing work. However, Triton Industries had already included the Earth
Movers invoice in the Triton Industries invoice for $578,614.60 because Triton
Industries paid Earth Movers $74,745.00 for the work. Prior to the submission of
the first draw to Integra Bank, LARRY MILDER sought proof from Triton

Industries that Earth Movers had been had executed a lien waiver to Triton Industries and that Earth Movers had been paid in full by Triton Industries.

10. It was also a part of the scheme and artifice to defraud that attached to the first draw request was a fraudulent invoice purportedly from Talbot Construction, Inc., in the amount of $1,062,500.00. Talbot Construction did no work on Point Berkeley III and was not owed any monies for site work on Point Berkeley III.

11. It was also a part of the scheme and artifice to defraud that on or about December 17, 2007, LARRY MILDER, as Chief Operating Officer, signed the first draw request spreadsheet on behalf of Point Berkeley III, thereby certifying that the actual expense incurred for import/clearing and grubbing work on the site was $1,715,859.60, when in truth and in fact the actual expense incurred for import/clearing and grubbing work on the site was $378,614.60. The defendants attached to the spreadsheet the inflated invoice from Triton Industries in the amount of $578,614.60, the duplicated invoice from Earth Movers in the amount of $74,745.00, and the fraudulent invoice purportedly from Talbot Construction in the amount of $1,062,500.00.

12. It was also a part of the scheme and artifice to defraud that on or about December 19, 2007, based upon the false and fraudulent draw request submitted by the defendants, Integra Bank disbursed to Point Berkeley III $1,715,859.60 for import/clearing and grubbing work on the site. Had Integra Bank known that the defendants, doing business as Point Berkeley III, actually spent only $378,614.60 for import/clearing and grubbing work, Integra Bank would have

4

disbursed only $378,614.60, not $1,715,859.60 for import/clearing and grubbing work.

13. It was also a part of the scheme and artifice to defraud that the defendants converted to their own use the overpayment of $1,337,245.00 from the first draw. The defendants' use of the overpayment of $1,337,245.00 was not authorized by the loan agreement with Integra Bank.

14. It was a part of the scheme and artifice to defraud that RONALD ONORATO, doing business as Point Berkeley III, LLC, later defaulted on repayment of the loan in its entirety thereby causing a loss to Integra Bank and Huntington National Bank in excess of $1,337,245.00. At the time of the default on the loan, Integra Bank was a recipient of funds from the United States Treasury pursuant to the Troubled Assets Relief Program (TARP).

All in violation of Title 18, United States Code, Section 1349.

### Count Two

15. On or about December 19, 2007, in the Northern District of Georgia, the defendants, RONALD ONORATO and LARRY MILDER, aided and abetted by each other and others, did devise and execute a scheme and artifice to defraud Integra Bank and Huntington National Bank, financial institutions the deposits for which were insured by the Federal Deposit Insurance Corporation, and did obtain and attempt to obtain moneys owned by and under the custody and control of Integra Bank and Huntington National Bank by means of false and fraudulent pretenses, representations and promises, and by the omission of material facts, knowing and having reason to know that said pretenses,

representations and promises were and would be false and fraudulent when made and that said omissions of fact were and would be material.

16. The grand jury incorporates by reference the allegations set forth in paragraphs 2-14, as set forth in Count One above, as if each and every allegation was restated herein.

All in violation of Title 18, United States Code, Sections 1344 and 2.

## Count Three

17. On or about July 2, 2009, in the Northern District of Georgia, the defendant, RONALD ONORATO, did devise and execute a scheme and artifice to defraud Integra Bank and Huntington National Bank, financial institutions the deposits for which were insured by the Federal Deposit Insurance Corporation, and did obtain and attempt to obtain moneys owned by and under the custody and control of Integra Bank and Huntington National Bank by means of false and fraudulent pretenses, representations and promises, and by the omission of material facts, knowing and having reason to know that said pretenses, representations and promises were and would be false and fraudulent when made and that said omissions of fact were and would be material.

18. The grand jury incorporates by reference the allegations set forth in paragraphs 2-5, as set forth in Count One above, as if each and every allegation was restated herein.

19. It is also a part of the scheme and artifice to defraud that on or about July 2, 2009, RONALD ONORATO, doing business as Point Berkeley III, submitted to Integra Bank draw request number 15 for the construction of the commercial,

6

retail, and office building. The amount of draw request number 15 was $456,374.30. Attached to the draw request were invoices totaling $438,144.30 from Ordner Construction, the general contractor on the construction project. The invoices were for work actually completed by Ordner Construction for work done since the previous draw.

20. It was also a part of the scheme and artifice to defraud that on the draw request RONALD ONORATO certified to Integra Bank that Ordner Construction had already been paid for the work set forth in the invoices attached to the draw request, when in truth and in fact Ordner Construction had not been paid for said work. Based upon RONALD ONORATO's false certification that Ordner Construction had been paid by Point Berkeley III for the work set forth in the invoices attached to draw request number 15, Integra Bank funded the draw in the amount of $456,374.30 which included the $438,144.30 for work performed by Ordner Construction.

21. It was also a part of the scheme and artifice to defraud that rather than paying Ordner Construction $438,144.30, RONALD ONORATO converted the $438,144.30 to his own use. Had Integra Bank been advised that RONALD ONORATO intended to convert $438,144.30 from the loan proceeds to his own use, Integra Bank would not have funded the draw.

All in violation of Title 18, United States Code, Section 1344.

## Forfeiture

This indictment charges the defendants, RONALD ONORATO and LARRY MILDER, with violations of Title 18, United States Code, Sections 1349 and 1344. Pursuant to Title 18, United States Code, Section 982 and Title 21, United States Code, Section 853, upon conviction of any such violation of Title 18, United States Code, Sections 1349 and 1344, such convicted defendant shall forfeit to the United States (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation, (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation. Such property includes,

(a) a money judgment in the amount of $1,337,245.00 which represents the value of the proceeds of the scheme charged in Counts One and Two, and

(b) a money judgment in the amount of $438,144.30 which represents the value of the proceeds of the scheme charged in Count Three.

Further, if any of the property described as being subject to forfeiture, as a result of any act or omission of the defendant;

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of this Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

8

it is the intent of the United States, pursuant to Title 21, United States Code,

Section 853(p), to seek forfeiture of any other property of said defendants.

A _____ BILL

_____
FOREPERSON

SALLY QUILLIAN YATES
 *United States Attorney*

William L. McKinnon, Jr.
 *Assistant United States Attorney*
Georgia Bar No. 495812

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181