IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § CASE NO. 2:15-cr-00001-RWS-JCF-2 |
| v. | § |
| | § |
| RONALD ONORATO and | § |
| LARRY MILDER, | § |
| | § |
| Defendant. | § |

## DEFENDANT MILDER'S
## MOTION TO SEVER TRIAL

COMES NOW, Larry Milder, Defendant in the above-captioned matter, by and through the undersigned counsel, and hereby files this Motion to Sever Trial[1], and hereby moves this honorable Court to sever his trial from the trial of his co-defendant, Ronald Onorato, and respectfully shows the following:

## I. <u>INTRODUCTION AND GROUNDS FOR SEVERANCE</u>

The Government has obtained a Criminal Indictment ("Indictment") against Defendant Ronald Onorato and Defendant Milder. *See* Doc. #1. It has charged

---

[1] Pursuant to the Court's Order, Doc. # 12, of February 16, 2015, in this matter, this Motion sets forth specific, individualized grounds as to why Defendant Milder will be prejudiced by being tried jointly with Defendant Ronald Onorato. *See* Doc. # 12, § IV(M).

Onorato with one count of bank fraud conspiracy, in violation of 18 U.S.C. § 1349 (Count One), and two counts of substantive bank fraud, in violation of 18 U.S.C. § 1344 (Counts Two and Three). *See id*. Mr. Milder is charged only in Counts One and Two. *Id*., pp. 1, 5.

**A. Counts One and Two: 2007 Point Berkeley III Transactions**

Specifically, the Government alleges in Count One that Defendant Onorato was the Chief Executive Officer of Northpoint Group, Inc. ("Northpoint Group") and that Mr. Milder was the Chief Operating Officer. Doc. #1, ¶ 2. It alleges that the Northpoint Group created Point Berkeley III, L.L.C., to construct a commercial property in Duluth, Georgia ("the Point Berkeley III property"). *Id*., ¶¶ 3, 4. It further alleges that, in the Fall of 2007, Defendant Onorato applied to Integra Bank for a construction loan in the amount of $35,613,000 to construct the Point Berkeley III property. *Id*., ¶ 5. In or around December of 2007, Integra Bank and Huntington National Bank approved the loan. *Id*.

The Government alleges that, on or about December 17, 2007, Defendant Onorato submitted a draw request to Integra Bank including a request for reimbursement of $1,715,859.60 for import, clearing, and/or grubbing work to the Point Berkeley III property. *Id*., ¶ 7. It alleges that an entity called Talbot Construction, Inc., submitted a fraudulent invoice for $1,062,500, which was

attached to the draw request. *Id*., ¶ 10. Furthermore, an entity called Triton Industries, Inc., submitted an inflated invoice for $578,614.60 for the draw request. *Id*., ¶ 8. An entity called Earth Movers and Associates, Inc., also submitted an invoice for $74,745.00 for the draw request, which amount was included in the amount billed by Triton Industries. *Id*., ¶ 9.

As a result of these fraudulent submissions, Count One of the Indictment alleges that Integra Bank disbursed $1,715,859.60 for import, clearing, and/or grubbing work to the Point Berkeley III property, where only $378,614.60 import, clearing, and/or grubbing work to the property had been performed, and that the Defendants allegedly converted the overpayment to their own use. *Id*., ¶¶ 12, 13. The Government alleges in Count Two of the Indictment that the acts alleged in Count One also constitute bank fraud, in violation of 18 U.S.C. § 1344. *Id*., ¶¶ 15, 16.

The only allegations by the Government against Mr. Milder in its Indictment with any factual specificity are that, sometime prior to Defendant Onorato's submission of the first draw request on or about December 17, 2007, Mr. Milder allegedly "sought proof from Triton Industries that Earth Movers had [ ] executed a lien waiver to Triton Industries and that Earth Movers had been paid in full by Triton Industries." *Id*., ¶ 9. And then that Mr. Milder allegedly, "as Chief

Operating Officer, signed the first draw request spreadsheet on behalf of Point Berkeley III, thereby certifying that the actual expense incurred for import/clearing and grubbing work on the site was $1,715,859.60…" *Id*., ¶ 11.

## B. Count Three: Defendant Onorato's 2009 Point Berkeley III Transactions

The Government alleges in Count Three of the Indictment that, on or about July 2, 2009, Defendant Onorato submitted a draw request to Integra Bank for $456,374.30, attaching invoices from Ordner Construction Company, Inc., for $438,144.30. Doc. #1, ¶ 19. Defendant Onorato falsely certified to Integra Bank that Ordner Construction Company had already been paid for the work invoiced, , in truth, Ordner Construction Company had not been paid. *Id*., ¶ 20. Defendant Onorato converted the funds to his own use. *Id*., ¶ 21.

## C. Mr. Milder's and Defendant Onorato's Antagonistic Defenses and the Need for Severance

Mr. Milder will present the defense at trial that he did not intentionally engage in bank fraud conspiracy or bank fraud. This central defense will involve Mr. Milder presenting evidence at trial establishing that, in or around December of 2007, he was unaware of Defendant Onorato's fraudulent conduct involving the Point Berkeley III transaction, that Defendant Onorato was engaged in other frauds (in fact, Mr. Milder lost $50,000 to Defendant Onorato in one of Defendant Onorato's investments schemes), that Defendant Onorato had a history of drug

4

abuse, and that Defendant Onorato caused one or more of his employees to falsify financial documents by "cutting and pasting" information into financial documents. It will be necessary to show evidence of Defendant Onorato's bad character and pattern of financial misconduct before and after Mr. Milder worked for him, to establish that Defendant Onorato, and not Mr. Milder, defrauded the financial institutions listed in the Indictment.

In order to establish Mr. Milder's good faith and lack of criminal intent, Mr. Milder will show that he told the Federal Bureau of Investigation (FBI) that Defendant Onorato should be investigated for wrongdoing. This disclosure occurred prior to the agents contacting Mr. Milder in this matter. In fact, the evidence will show that Mr. Milder gladly assisted the investigating agents and even contacted another witness to come to his home and meet with the agents.

Mr. Milder's defense that Defendant Onorato was responsible for the criminal conduct alleged by the Government in its Indictment will be antagonistic to Defendant Onorato's anticipated defenses at trial. Any joint trial of Defendant Onorato and Mr. Milder will furthermore be mutually prejudicial to Mr. Milder and Defendant Onorato, as a result of the anticipated introduction of evidence of criminal activity not involving one or the other of the Defendants. For the reasons set forth herein, the Court should grant Mr. Milder's Motion in the interest of

justice, and any trial of Mr. Milder should be severed from any trial of Defendant Onorato.

## II. ARGUMENT AND CITATION OF AUTHORITIES

Federal Rule of Criminal Procedure 14 provides, in relevant part:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a) (emphasis added). A motion for severance "is addressed to the discretion of the court, reviewable for abuse of discretion." *Byrd v. Wainwright*, 428 F.2d 1017, 1018 (5th Cir. 1970) (citing *Sosa v. State*, 215 So.2d 736 (Fla. 1968); *Smith v. United States*, 385 F.2d 34 (5th Cir. 1967)).

Severance of any trial of Mr. Milder from any trial of Defendant Onorato is supported by the fact that, upon information and belief, Mr. Milder's defenses at trial and those of Defendant Onorato will be "antagonistic and mutually exclusive..." *United States v. Gonzalez*, 804 F.2d 691, 695 (11th Cir. 1986) ("'[I]f the jury, in order to believe the core of the testimony offered on behalf of that defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant,' severance is compelled) (quoting *United States v. Berkowitz*, 662 F.2d 1127 (5th Cir. 1981)).Mr. Milder will defend in any trial of this matter that he

did not conspire with Defendant Onorato to commit bank fraud and did not intentionally commit bank fraud, and that Defendant Onorato was fully responsible for the alleged bank fraud. Mr. Milder expects to present evidence of uncharged, criminal acts by Defendant Onorato in any trial.

Furthermore, upon information and belief, Mr. Milder anticipates that Defendant Onorato will attempt to shift responsibility for the acts alleged in the Indictment to Mr. Milder. Accordingly, under Rule 14(a), the Court possesses sufficient discretion and grounds to sever any trial of Defendant Onorato from any trial of Mr. Milder.

Severance of any trial of Defendant Onorato from any trial of Mr. Milder is furthermore necessary to avoid prejudice to Mr. Milder and is in the interest of justice, under Rule 14(a). Mr. Milder will be severely prejudiced by any joint trial with Defendant Onorato in this matter. The Eleventh Circuit Court of Appeals has recognized the risk of potential prejudice to a defendant in the introduction of evidence "of other crimes and criminal activities undertaken by co-defendants." *United States v. Glinton*, 154 F.3d 1245, 1250-51 (11th Cir. 1998) (citing *United States v. Gaviria*, 116 F.3d 1498, 1533 (D.C. Cir. 1997)). The Government is expected to introduce evidence regarding the 2009 Point Berkeley III property transactions in Count Three in any joint trial of Defendant Onorato and Mr. Milder.

Mr. Milder is not a party to Count Three. Introduction of evidence of Defendant Onorato's criminal activity in Count Three presents a considerable danger that the jury will make the prohibited inference that Defendant Onorato and Mr. Milder are "a bird of the same feather." *See United States v. Fernandez*, 892 F.2d 976, 990-91 (11th Cir. 1989); *Glinton*, 154 F.3d at 1250-51. Furthermore, Mr. Milder anticipates introducing evidence establishing that Defendant Onorato directed Northpoint Group employees to falsify documents, and that Defendant Onorato abused illegal drugs. The spillover prejudice to both Mr. Milder and Defendant Onorato from any potential joint trial in which the defendants assert antagonistic and exclusive defenses against one another and in which evidence of uncharged criminal activity is introduced against one defendant but not the other cautions the Court's exercise of its substantial discretion under Rule 14(a) and the severance of the defendants' trials in this matter.

The Eleventh Circuit reversed a defendant's conviction for failure to sever the trial of the defendants based upon "antagonistic and mutually exclusive" defenses in *United States v. Gonzalez*. *Id*. at 696. The defendants, Gonzalez and Lopez were arrested when a Coast Guard vessel intercepted a tugboat towing a cabin cruiser off the coast of Florida and boarded the vessels, discovering boxes containing cocaine onboard the cruiser. *Id*. at 692-93. At trial, Lopez testified that

he had been hired to repair the cruiser, that Gonzalez had represented himself as the owner of the cruiser, that Gonzalez and another individual had rented the tugboat and that Gonzalez had instructed Lopez to remain onboard the cruiser to control a leak. *Id*. at 693. Lopez further testified that Gonzalez had hidden the key to the cruiser's engine in his cell, which was confirmed by a search of Gonzalez's cell. *Id*. at 693-94. In contrast, Gonzalez testified that he was not the owner of the cruiser and had borrowed the vessel from its owner for the purpose of transporting oil to Bimini, that he met Lopez for the first time in Bimini and saw Lopez and another individual put something on the cruiser. *Id*. at 694. Gonzalez further stated at trial that Lopez had threatened to testify against him because Gonzalez had not secured bond for Lopez or paid him any money, and denied ever promising Lopez anything to testify on his behalf. *Id*.

Gonzalez and Lopez were convicted and Gonzalez appealed, arguing that the trial court abused its discretion in denying his motions for severance pursuant to Rule 14. *Id*. The Eleventh Circuit reversed, concluding that:

> The record discloses that the defenses asserted by Lopez and Gonzalez were irreconcilable and mutually exclusive. Lopez incriminated Gonzalez at every opportunity...
> Even though Gonzalez attempted to show that he was not culpable, under the *Berkowitz* standard, *these inherently prejudicial conditions created a fundamentally unfair trial*...
> A severance of Gonzalez's case was required under these particular circumstances. There were only two defendants, the evidence was

uncomplicated and it would neither have been too time consuming nor impracticable to have two separate trials. "Although the evidence of each defendant's individual guilt was strong, this joint trial was intrinsically prejudicial." [Cit.]. *Fundamental fairness is our paramount concern...*

*Id*. at 695 & 96 (emphasis added) (citing *United States v. Crawford*, 581 F.2d 489, 492 (5th Cir. 1978)).

As in the *Gonzalez* case, Mr. Milder and Defendant Onorato are anticipated to attempt to incriminate one another at every opportunity in any trial of this matter. Forcing Mr. Milder and Defendant Onorato to submit to a joint trial would achieve the result of depriving Mr. Milder of a fair trial. In order to guarantee Mr. Milder a fair trial and avoid substantial prejudice to either Mr. Milder or Defendant Onorato, the Court should exercise its discretion and sever their trials in this matter.

## III. <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein, Defendant Larry Milder requests that this Court grant his Motion to Sever Trial and sever any trial of Defendant Milder in this matter from any trial of his co-defendant, Defendant Ronald Onorato.

Respectfully submitted, this 20th day February, 2015.

GILLEN WITHERS & LAKE, LLC

**s/Craig A. Gillen**_____
Craig A. Gillen
Georgia Bar No. 294838
One Securities Centre, Suite 1050
3490 Piedmont Road, N.E.
Atlanta, Georgia 30305
Telephone:   (404) 842-9700
Facsimile:   (404) 842-9750
E-mail:        cgillen@gwllawfirm.com

COUNSEL FOR LARRY MILDER

## <u>CERTIFICATION</u>

Counsel for Defendant Larry Milder certifies that he has conferred with opposing counsel for the United States of America in a good faith effort to resolve the subject-matter of this Motion by agreement, but was unable to reach agreement on the resolution of the issue therein, pursuant to N.D.Ga.L.Crim.R. 12.1D. Counsel also certifies, pursuant to N.D.Ga.L.Civ.R. 7.1D, that the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in N.D.Ga.L.Civ.R. 5.1B.

GILLEN WITHERS & LAKE, LLC

**s/Craig A. Gillen**_____
Craig A. Gillen
Georgia Bar No. 294838
One Securities Centre, Suite 1050
3490 Piedmont Road, N.E.
Atlanta, Georgia 30305
Telephone:   (404) 842-9700
Facsimile:   (404) 842-9750
E-mail:       cgillen@gwllawfirm.com

COUNSEL FOR LARRY MILDER

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this 20th day February, 2015, the undersigned electronically filed the foregoing document, using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

**William Louis McKinnon, Jr., Esq.**
**Assistant United States Attorney**
**United States Attorney's Office for the Northern District of Georgia**
600 United States Courthouse
75 Spring Street, S.W.
Atlanta, Georgia 30303

**Aaron M. Danzig, Esq.**
**Arnall Golden Gregory**
171 17th Street, N.W.
Suite 2100
Atlanta, Georgia 30363

GILLEN WITHERS & LAKE, LLC

**s/Craig A. Gillen**
Craig A. Gillen
Georgia Bar No. 294838
One Securities Centre, Suite 1050
3490 Piedmont Road, N.E.
Atlanta, Georgia 30305
Telephone:   (404) 842-9700
Facsimile:   (404) 842-9750
E-mail:       cgillen@gwllawfirm.com

COUNSEL FOR LARRY MILDER