UNTIED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RONALD ONORATO AND<br>LARRY MILDER | CRIMINAL ACTION<br><br>No. 2:15-CR-0001-RWS |

**DEFENDANT RONALD ONORATO'S REPLY BRIEF IN SUPPORT
OF MOTION TO COMPEL PRODUCTION OF SPECIFIC DISCOVERY
MATERIAL AND TO CONTINUE APRIL 21, 2015 HEARING**

On April 3, 2015, Mr. Onorato filed a Motion to Compel Production of Specific Discovery Material and to Continue the agreed-upon April 21, 2015 hearing [Doc. 45] on Mr. Onorato's Motion to Suppress Statements and Disqualify Counsel [Doc. 24]. He was forced to file the Motion to Compel because the government, despite agreeing to produce summary reports of Mr. Onorato's statements and specifically requested *Brady* material, never provided that information and never responded to Mr. Onorato's request for internal communications by, between, and among the agents and the U.S. Attorney's Office related to the subject matter of Mr. Onorato's Motion to Suppress Statements and Disqualify Counsel.

7596940v1

In response to Mr. Onorato's motion, the government agreed to provide the summary reports and requested *Brady* material, declined to produce the internal communications, and now argues that there should not be an evidentiary hearing despite acceding during the February 27, 2015 pretrial conference to the Court's decision to hold such a hearing. For at least three reasons, the government's positions are unavailing.

First, notwithstanding its obligation and agreement to produce the reports and the requested *Brady* material, the government has not done so. Second, the requested internal communications are directly relevant to the wrongful acts complained of in Mr. Onorato's Motion to Suppress and Disqualify and should be produced. At a minimum, the government should, therefore, be required to present them for *in camera* review by the Court. Finally, the government argues that no hearing should be held because Mr. Onorato has not sufficiently proven the merit of his motion. This argument, however, is nonsensical – Mr. Onorato needs the benefit of the agreed-upon evidentiary hearing in order to fully establish a record that supports his motion. To deny Mr. Onorato the opportunity to establish that record, especially where he has raised serious issues which the government does

not even contest in its response, would be improper and deny Mr. Onorato of his due process rights.

I. Mr. Onorato's Statements and *Brady* Material

There is no dispute that Mr. Onorato is entitled to reports of his statements and to the requested *Brady* material. The government has agreed repeatedly to provide such information, both informally in communications with counsel for Mr. Onorato and formally in response to the Motion to Compel. Yet, it has still not been provided. In so far as Mr. Onorato's motion seeks such documents, they should be produced.

II. Internal Agent and U.S. Attorney's Office Communications

The government further argues (i) that Mr. Onorato cannot show that the government's actions created a potential attorney-client relationship between Mr. Onorato and the U.S. Attorney's Office and (ii) that violations of the Crime Victim Rights Act (CVRA) do not provide for a cause of action for damages. Therefore, the government argues, Mr. Onorato is not entitled to discovery of documents that would be relevant to making such a showing. This is akin to arguing that the defense loses because the government refuses access to documentation showing that the defense wins. Respectfully, it should be rejected by the Court.

The Government cites *United States v. Whittaker*, 201 F.R.D. 363, 367 (E.D.Pa. 2001), for the proposition that a victim is not a client of the government. In *Whittaker*, one Assistant U.S. Attorney (AUSA) sent a victim letter to defendant Whittaker (along with several other individuals) informing him of certain rights as a victim of a "chop shop" scheme while, at the same time, another AUSA in the same office was preparing an indictment of Whittaker as a perpetrator of that scheme. Upon receiving the letter, Whittaker's attorney contacted the AUSA who sent the letter and was told it was a mistake. 201 F.R.D. 363, 366 n.3. Whittaker was indicted the month after receiving the victim letter. His counsel moved to disqualify the U.S. Attorney's Office based on violations of ethical rules, which the district court granted but the appellate court reversed on other grounds. 201 F.R.D. 363, *reversed on other grounds*, 268 F.3d 185 (3rd Cir. 2001).

With respect to the question of whether the CVRA created an attorney-client privilege between and victim and the United States Attorney, the district court in Pennsylvania ultimately found in the negative, but struggled with the question even though the facts (i.e., an admittedly mistaken single letter to the defendant) were far less egregious than in Mr. Onorato's case. Specifically, the court stated:

> It is not obvious what, if any, relationship §§ 10606 and 10607

creates. For example, in giving victims "[t]he right to confer with [the] attorney for the Government in the case", § 10606(b)(5) imposes upon the AUSA the duty to "inform a victim of any restitution or other relief to which the victim may be entitled under this or any other law and [the] manner in which such relief may be obtained", §10607(c)(1)(B). It is unclear whether the victim, in exercising these rights, or the AUSA in fulfilling them, are covered by the attorney-client privilege. It is also not clear whether the victim's likely and understandable expectation of confidentiality transforms the statutorily mandated relationship into one of attorney and client. What is clear is that Congress, in adopting what it called the Victims' Rights and Restitution Act of 1990, manifested an intention to grant significant real world rights to the victims of crime. In order to afford meaning to the victim's "right to confer" with a Government attorney, it involves no great reach to infer that there must be some degree of confidentiality in that right of conference, and therefore something resembling what is usually thought of as a client-attorney relationship or the expectation of one.

On the other hand, in § 10606(c) Congress explicitly refused to "create a cause of action or defense in favor of any person arising out of the failure to accord to a victim the rights enumerated in subsection (b)", and in § 10607(d) denied a cause of action in the cognate language "arising out of the failure of a responsible person to provide information as required by subsection (b) or (c)". It thus would appear that Congress negated anything that could be construed as a malpractice right usually associated with clients and their attorneys.

Though the question is by no means free from doubt, we conclude that §§ 10606 and 10607 do not create a client-attorney relationship or a reasonable expectation of one. As a result, Rules of Professional Conduct 1.7 and 1.9, which concern clients and former clients, do not apply.

201 F.R.D. at 367-68.

The facts in *Whittaker* are readily distinguishable from the instant case. Unlike *Whittaker*, there is just one prosecutor in this case who is prosecuting both Kleinsmith, where Mr. Onorato is the sole alleged victim, and Mr. Onorato. Additionally, instead of a single letter sent by mistake, after repeated interviews of Mr. Onorato in his status as a victim, the agents then requested a specifically scheduled meeting, ostensibly for purpose of the Kleinsmith investigation but, in reality, a ruse to interrogate Mr. Onorato.

Whether the CVRA itself gives rise to an attorney-client relationship between the government and an abstract victim is virtually irrelevant to whether such a relationship existed in this case. After all, even if no attorney-client relationship is specifically conferred by the CVRA, the agents' actions and statements to Mr. Onorato could create one. In fact, the government in its response brief does not contest the case law that holds "[a]ll that is necessary [for attorney client relationship] is a 'reasonable belief' on the part of the would-be client that he or she was being represented by the attorney." *Calhoun v. Tapley*, 196 Ga. App. 318, 319 (Ga. Ct. App. 1990). Hence, a hearing is necessary to bear out the scope and extent of the agents' ruse, and internal government communications on this topic are relevant and should be produced.

Also, the government argues that, because the CVRA does not provide for a cause of action for <u>damages</u>, Mr. Onorato is not entitled to internal government communications that could support his argument that there was an intentional violation of the CVRA. But Mr. Onorato is not seeking a cause of action "damages." He is seeking suppression of improperly obtained evidence. The requested internal communications by, between, and among the agents and prosecutor related to the decision to interrogate Mr. Onorato about his alleged fraud under the guise of asking about how he was victimized is directly relevant to the suppression motion.[1]

---

[1] Additionally, the government claims the Motion to Disqualify is without merit because Mr. Onorato "does not make any effort to address the cases cited [in the government's brief] even though these cases address the specific motion at issue here, i.e., a motion to disqualify an entire United States Attorney's Office." [Doc. 51 at p. 13]. Mr. Onorato did not address the cases referenced by the government because the motion to which the government is responding is the Motion to Compel documents not the Motion to Suppress and Disqualify Counsel. That motion will be fully briefed <u>after</u> the agreed-upon evidentiary hearing and with the benefit of the transcripts from the hearing. That said, the *Whitaker* case, on appeal, reversed disqualification of entire U.S. Attorney's Office, not because such a sanction is prohibited, but because the conduct there, as described above, was at worst negligent and the U.S. Attorney's Office acted promptly to correct the mistake. *Whittaker*, 268 F.3d at 194. Moreover, Whittaker did not suggest that he took any adverse action as a result of the letter or that the government used the

The government further cites *United States v. Mwangi*, 2010 WL 520793 (N.D.Ga. 2010), to argue that Mr. Onorato's statements were voluntary, pointing to this Court's recitation of factors to consider when evaluating voluntariness. [Doc. 51 at p. 9]. They include "disregard for applicable law, and the suspect's physical and mental condition." 2010 WL 520793, *10. Here, the agents disregarded applicable law, including the CVRA, and Mr. Onorato's mental condition is relevant in the sense that he was tricked into believing he was requested to talk to the agents in his status as a victim, not a target. Moreover, the government neglects to include the paragraph immediately preceding its Mwangi citation. The Court in Mwangi also stated:

> The voluntariness analysis focuses "'on whether the defendant was coerced by the government into making the statement: The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or **deception**.' Thompson, 422 F.3d at 1295 (quoting United States v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir. 1992)."

Mwangi, 2010 WL 520793, at *9 (emphasis added).

---

victim letter for "any improper purpose, such as to gain an interview with Whittaker to obtain incriminating evidence." Id. at 188. Conversely, Mr. Onorato in this case alleges a deliberate and intentional violation by the U.S. Attorney's Office and/or its agents.

Internal government communications that relate to the decision to engage in deceptive questioning of Mr. Onorato are directly relevant to these factors, and, therefore, should be produced. Or, at a minimum, the government should be directed to provide the communications to the Court for an *in camera* review to determine whether they should be produced to Mr. Onorato.

III.   An Evidentiary Hearing Should Be Held

The government's delay in producing documents that it previously agreed to produce necessitated Mr. Onorato's Motion to Compel and the continuance of the hearing that had been scheduled with the government's acquiescence. Indeed, the government even agreed that it would make the agents available to testify. [Doc. 45, Exhibit B]. But now the government seeks to benefit from its inexcusable delay in producing documents by arguing that Mr. Onorato's Motion to Suppress and Disqualify Counsel should be denied without even an evidentiary hearing. Putting aside the motivations of the government in attempting to block Mr. Onorato's public examination of its actions, the Court should reject the government's eleventh hour request and proceed to a hearing where a fulsome evidentiary record can be presented.

IV.	Conclusion

For the foregoing reasons, and as set forth in Mr. Onorato's Motion to Compel, the Court should order the government to produce the requested documents and decline the government's request to cancel the agreed-upon evidentiary hearing.

Dated:  May 4, 2015

                                       ARNALL GOLDEN GREGORY LLP

                                       */s/ Aaron M. Danzig*
                                       Aaron M. Danzig
                                       Ga. Bar No. 2015151
                                       171 17th St., NW
                                       Suite 2100
                                       Atlanta, Georgia 30363-1031
                                       Phone: (404) 873-8504
                                       Fax: (404) 873-8505
                                       Email: aaron.danzig@agg.com

                                       Counsel for Ronald Onorato

## **LOCAL RULE 7.1(D) CERTIFICATION**

I certify that the foregoing has been formatted in Time New Roman, 14-point font type, which complies with the font size and requirements of Local Rule 5.1(B).

Dated:  May 4, 2015

*/s/ Aaron M. Danzig*
Aaron M. Danzig

## CERTIFICATE OF SERVICE

I certify that I have electronically filed the forgoing document with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

Dated:  May 4, 2015.

>  */s/ Aaron M. Danzig*
>  Aaron M. Danzig